UNITED STATES of America, Appellee,

v.

Carmell MACKLIN, Appellant.

UNITED STATES of America, Appellee,

v.

Louzar BURNES a/k/a Candy a/k/a Smokey, Appellant.

UNITED STATES of America, Appellee,

v.

Betty MITCHELL, Appellant.

UNITED STATES of America, Appellee,

v.

Robert Houston WOODS, Appellant.

UNITED STATES of America, Appellee,

v.

Terrell WILLIAMS, Appellant.

UNITED STATES of America, Appellee,

v.

Arnold MITCHELL, Appellant.

UNITED STATES of America, Appellee,

v.

John Alvin PAYNE, Appellant.

UNITED STATES of America, Appellee,

v.

Stanley ROBINSON, Appellant.

Nos. 88–2712—88–2714, 88–2737, 88–2767, 88–2768, 88–2870, 88–2871.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 16, 1990.

Decided May 7, 1990.

Rehearing and Rehearing En Banc Denied in No. 88–2737 July 6, 1990.

Rehearing and Rehearing En Banc Denied in No. 88–2712 July 10, 1990.

Richard Shreves, Austin, Tex., Mary Elizabeth Ott, Daniel P. Reardon, Jr., Robert B. Ramsey, Donald L. Wolff, Clayton, Mo., and Charles E. Kirksey, St. Louis, Mo., for appellants.

Mitchell F. Stevens, St. Louis, Mo., for appellee.

Before BOWMAN, WOLLMAN and BEAM, Circuit Judges.

BEAM, Circuit Judge.

Eight defendants appeal from their convictions for conspiracy to possess and distribute cocaine, and for other drug related offenses. On appeal, several of the defendants unite to challenge the authorization of electronic surveillance, the fruits of which were used extensively by the government at trial. The other defendants appeal on a variety of grounds. We affirm.

## I. BACKGROUND

On September 30, 1987, a federal grand jury indicted fifteen persons on drug related charges stemming from their alleged involvement in a conspiracy to distribute cocaine in the St. Louis area.[1] Count I of the thirty count indictment charged all named defendants with conspiracy to distribute cocaine from March of 1986 to March of 1987 in violation of 21 U.S.C. § 841(a)(1) (1988). Counts II through XXII of the indictment charged individual defendants with specific instances of possession with intent to distribute in violation of section 841(a)(1). In addition, count XXIII charged John Alvin Payne, the principal figure in the conspiracy, with a continuing criminal enterprise in violation of 21 U.S.C. § 848 (1988). Payne was also charged, together with other defendants, with conspiracy to impede the Internal Revenue Service, a violation of 18 U.S.C. § 371 (1988) (count XXIV); conspiracy to launder drug proceeds in violation of 18 U.S.C. §§ 371,

---

**1.** Of the fifteen named defendants, eight appeal in this case: Carmell Macklin, Stanley Robinson, Tarrel Williams, John Alvin Payne, Robert Houston Woods, Louzar Burnes, Arnold Mitchell and Betty Mitchell. Four were tried separately or their cases were otherwise disposed of: Michael Batchman, Lee Autry Wright, Brice Calhoun, and Cheryl Love. Two, Thomas E. Payne (John Alvin Payne's brother), and Donna Marks, were acquitted of all charges. One, Clara Rockette Davis, pleaded guilty to two counts after entering the federal witness protection program and testifying on behalf of the government.

1956(a)(1)(A), 1956(a)(2) (1988) (counts XXV through XXVII); and structuring financial transactions in violation of 31 U.S.C. § 5324(3) (1988) (counts XXVIII through XXX).

While John Alvin Payne's involvement in cocaine trafficking in the St. Louis area allegedly began before 1977, the indictment of September 30 covered, as indicated, only the period from March of 1986 to March of 1987. During that time, Payne was living in Los Angeles where he operated a large-scale drug operation out of the Cache Inn, a hotel he owned with his brother, Thomas E. Payne. Payne used Tarrel Williams as a courier to transport cocaine via commercial carrier from Los Angeles to St. Louis. Once in St. Louis, the cocaine was distributed to defendants Burnes, Woods, Macklin, Robinson, Arnold and Betty Mitchell, and others, for further distribution. Clara Davis, who met Payne socially in November of 1985, first became involved in the conspiracy in March of 1986, when, at Payne's direction, she met Tarrel Williams at the Northwest Inn in St. Louis following his arrival from Los Angeles with cocaine. As a confidante of Payne, Davis later became responsible for dispersing cocaine to Payne's St. Louis distributors, for collecting the proceeds from its sale, and for transferring money to Payne in Los Angeles. Partly because of her position in the conspiracy, Davis became the government's key witness at trial.

The government's 1985 and 1986 investigation of the conspiracy led to the applications for electronic surveillance on telephones used by Davis and Lee Autry Wright, who was one of Payne's biggest distributors in the St. Louis area, and who was also named in the indictment. The government sought wiretaps for three circuits. Two phone numbers were listed to Delois Williams, both for the residence at 2129 Roundtree in St. Louis, where Wright was known to reside with Williams. The government also sought a wiretap on the telephone number listed to Clara Davis, for the residence at 7449 Liberty Avenue in University City, Missouri. Surveillance on the telephones at Wright's residence began on December 9, 1986, and ended on February 8, 1987. Surveillance on the Davis telephone began on January 13, 1987, and ended on March 25, 1987.[2] On March 25, 1987, Davis and Tarrel Williams were arrested at the Northwest Inn in St. Louis, where Williams went to meet Davis after he arrived from Los Angeles with ten kilograms of cocaine.

Following her arrest, Davis entered the federal witness protection program and was the government's chief witness at trial. Davis testified to the events of the conspiracy, referred to several diaries she had kept, and explained the intercepted telephone conversations, some of which were played to the jury. Because many of these conversations were brief and encoded, the government relied heavily on Davis. The government's direct examination of Davis lasted for almost three days, and cross-examination lasted another four. None of the defendants testified.[3]

## II. DISCUSSION

### A. Electronic Surveillance

Appellants Payne and Burnes, in their joint brief,[4] attack the authorization of elec-

2. One extension was authorized, on January 9, 1987, for the Wright telephones. Two extensions were authorized, on February 12, 1987, and on March 13, 1987, for the Davis telephone.

3. As indicated, Thomas E. Payne was acquitted of counts I, XXV and XXVII, all the counts against him. Donna Marks was also acquitted of all charges, the single count against her being count I. John Alvin Payne was acquitted of counts XXV through XXVII, the money laundering charges, but convicted of all other counts. Betty Mitchell was acquitted of possession with intent to distribute cocaine, but convicted of both the lesser included offense of simple possession, in violation of 21 U.S.C. § 841, and the conspiracy charge in count I. All other defendants were convicted on all counts: Louzar Burnes of counts I and XI; Tarrel Williams of counts I, IV, XV and XVI; Arnold Mitchell of counts I, VIII and XX; Robert Houston Woods of counts I, VII, and XIV; Stanley Robinson of counts I and VI; and Carmell Macklin of counts I and X. On appeal, none of the defendants challenge their sentences.

4. Payne and Burnes are joined by appellants Robinson (Brief for Appellant Robinson at 21) and Woods (Brief for Appellant Woods at 17),

tronic surveillance. Payne and Burnes argue that: the affidavits in support of the applications for electronic surveillance do not satisfy the probable cause requirements of 18 U.S.C. § 2518(3)(a), (b) (1988); that the information contained in the affidavits in support of the government's applications was stale; and that the statutory requirements of 18 U.S.C. § 2518(3)(c), requiring that the government first employ normal investigative techniques before resorting to a wiretap, were not met. Appellant Macklin joins these arguments, arguing in addition that the government failed to minimize its interception of phone conversations pursuant to 18 U.S.C. § 2518(5). We examine each argument in turn.[5]

### 1. Probable Cause

The procedures for the authorization of electronic surveillance are found in 18 U.S.C. § 2518. As to probable cause, the statute provides that a judge may authorize a wiretap upon a determination that "there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter," *Id.* § 2518(3)(a), and that "there is probable cause for belief that particular communications concerning that offense will be obtained through such interception." *Id.* § 2518(3)(b). Appellant Macklin argues that the affidavits in support of the government's applications for wiretaps do not provide probable cause because they are broad, speculative and conclusory. In statutory terms, Macklin argues that there was no probable cause to conclude either that he was engaged in a conspiracy to distribute cocaine, or that communications relating to the conspiracy would be intercepted. The argument of Payne and Burnes is directed solely to section 2518(3)(b), that there was no probable cause that the wiretaps would record any conversations related to the conspiracy.

After a thorough and careful examination of the affidavits in support of the government's applications for surveillance, we conclude that the affidavits provided the issuing judge with more than a substantial basis to believe both that appellants were involved in a conspiracy to distribute cocaine, and that communications concerning that conspiracy would be intercepted by the wiretaps authorized.

■■■ The probable cause showing required by section 2518 for electronic surveillance does not differ from that required by the fourth amendment for a search warrant. *United States v. Leisure,* 844 F.2d 1347, 1354 (8th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 324, 102 L.Ed.2d 342 (1988); *United States v. Townsley,* 843 F.2d 1070, 1076 (8th Cir.1988). The Supreme Court has clearly delineated the standard which an issuing judge must follow in determining whether probable cause supports a warrant, as well as the duty of a reviewing court.

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). Thus, this court does not conduct a *de novo* review of the issuing judge's determination, but must instead afford it great deference. *Id.* 462 U.S. at 236, 103

---

whose briefs contain statements adopting their electronic surveillance arguments. Betty Mitchell, Arnold Mitchell and Tarrel Williams apparently do not join them.

**5.** The government argues that only appellant Payne has standing to attack the wiretap orders

for telephones at the residence of Lee Autry Wright. Since we find that probable cause existed to support the authorization of the wiretaps, and that the statutory requirements of section 2518 were met, we need not address this argument.

S.Ct. at 2331. We do not review the affidavits in a hypertechnical manner, but rather with an eye toward a commonsense determination. *Id.*

These principles are well established and have been consistently followed in this circuit. *See, e.g., United States v. Davis,* 882 F.2d 1334, 1343 (8th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1472, 108 L.Ed.2d 610 (1990) (totality of facts and circumstances support a reasonable belief); *Townsley,* 843 F.2d at 1076–77 (court should not engage in punctilious, paragraph by paragraph review of affidavits, but should look for a substantial basis for magistrate's decision); *United States v. Gregg,* 829 F.2d 1430, 1434 (8th Cir.1987), *cert. denied,* 486 U.S. 1022, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988) (need only substantial evidence in the record to support magistrate's decision); *United States v. Garcia,* 785 F.2d 214, 221–22 (8th Cir.), *cert. denied,* 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986) (broad discretion afforded to issuing judge, who determines probable cause in a practical, commonsense manner). We have reviewed the affidavits with these principles firmly in mind.

■ As noted, the first order authorizing electronic surveillance was issued on December 9, 1986, for the phones at 2129 Roundtree, the residence of Delois Williams and Lee Autry Wright. Douglas A. Dunnam, for twenty-one years a special agent with the F.B.I., prepared and signed the affidavit in support of the government's application. The affidavit contains abundant evidence that appellants were involved in a conspiracy to distribute cocaine, and that the wiretaps would intercept communications relating to that conspiracy. The affidavit contains information from ten confidential sources, all of whom the affiant found to be reliable. Affidavit of December 9, 1986, at ¶¶ 7–16. Moreover, nine of the sources specifically identified Payne as a major supplier of cocaine in St. Louis from as early as 1977 to September of 1986. *Id.* ¶ 17(a)(1), (2), (4–7), (9), (11), (15). The affidavit also contains information from other F.B.I. investigations. The Drug Enforcement Agency, for instance, executed a search warrant in September of 1986 which netted cocaine and currency, leading to the arrest of Wright. *Id.* ¶ 17(a)(14). And the affidavit contains information garnered by physical surveillance. In November of 1986, Clara Davis, for example, was followed to the St. Louis airport, where she boarded a flight to Los Angeles; there she was observed meeting with Payne. *Id.* ¶¶ 21–24. Similarly, the affidavits supporting the orders authorizing surveillance on the telephone listed to Clara Davis at 7449 Liberty Avenue show, for example, that Payne was observed at that address with Davis in December of 1986, and that he was observed having lunch with appellant Macklin on the same visit to St. Louis. Affidavit of January 13, 1987, at ¶ 11.

The affidavits also contain detailed information gathered from pen registers which had been installed on the same phones prior to the applications for electronic surveillance. The pen register on one number used by Wright listed 472 calls to sixteen different numbers, all of which were listed to persons connected with the conspiracy or otherwise known to be drug traffickers. Affidavit of December 9, 1986, at ¶ 18(c). Pen registers on other numbers used by Wright listed 826 similar calls. Affidavit of December 9, 1986, at ¶ 18(d)–(f). The pen register installed on the Davis phone listed 107 apparently drug related calls, including calls to numbers listed to Payne in Los Angeles at the time of a visit by Davis to Los Angeles in November of 1986. Affidavit of January 13, 1987, at ¶ 9(a)–(i).

The affidavit of January 13, 1987, also contains information from the December 9, 1986, wiretap already authorized on the telephones used by Wright. Those wiretaps yielded several conversations between Davis and Wright. Affidavit of January 13, 1987, at ¶ 13. Similarly, the successive affidavits for continued electronic surveillance on the Wright telephones also use information gained from prior electronic surveillance. Affidavit of January 9, 1987, at ¶¶ 9–14. We have held that information from prior authorized electronic surveillance is relevant in making a probable

cause determination. *Townsley*, 843 F.2d at 1078.

Based on this extensive and detailed information, we do not agree with appellants that the affidavits are broad, speculative and conclusory. Rather, they contain specific information from a variety of sources which have been held to support a showing of probable cause. *See, e.g., Leisure*, 844 F.2d at 1356 (use of confidential informants, toll records and physical surveillance sufficient to provide probable cause); *Townsley*, 843 F.2d at 1078–79 (confidential informants and information from prior electronic surveillance sufficient); *Garcia*, 785 F.2d at 223 (use of pen registers and visual surveillance supports finding of probable cause). Thus, we find that the affidavits in this case clearly provide a substantial basis for probable cause that appellants were members of a conspiracy to distribute cocaine in St. Louis, and that wiretaps at the indicated numbers were likely to intercept communications related to the conspiracy.

### 2. Staleness

■ Appellants Payne and Burnes make a related probable cause argument, that the information contained in the affidavit of December 9, 1986, some of it dating to 1977, is stale. While the affidavit does contain information from the late 1970's and early 1980's, this information is provided as mere background, and its presence does not taint more recent information in the affidavit. We agree with the First Circuit that "[w]here recent information corroborates otherwise stale information, probable cause may be found." *Emery v. Holmes*, 824 F.2d 143, 149 (1st Cir.1987). Most of the information in the affidavit of December 9, 1986, is from 1986, much of it from September through November of 1986. It would be ludicrous to find that an affidavit with such current information were stale merely because of the presence of earlier, historical information.

■ Moreover, the law is clear in this circuit that the mere lapse of time between the stated information and the request for a warrant is not controlling. Rather, the nature of the criminal activity involved must be considered. Where it is continuous and ongoing, as with this drug conspiracy, any lapse of time is less significant. *See, e.g., United States v. Jones*, 801 F.2d 304, 314 (8th Cir.1986) (passage of time between events and issuance of warrant is less significant with continuing criminal enterprise); *United States v. Lueth*, 807 F.2d 719, 727 (8th Cir.1986) (continuous and ongoing criminal activity relevant to probable cause determination); *United States v. Ellison*, 793 F.2d 942, 947 (8th Cir.), *cert. denied*, 479 U.S. 937, 107 S.Ct. 415, 93 L.Ed.2d 366 (1986) (same). Given that most of the information in the December 9, 1986, affidavit was from late 1986, and that the criminal activity was ongoing and continuous, we find that the information was not stale.

### 3. Necessity

Appellants next argue that electronic surveillance was not necessary. 18 U.S.C. § 2518. Section 2518 requires that an application for electronic surveillance contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id.* § 2518(1)(c). Appellants maintain that none of the affidavits meet this standard, and that they contain only broad, speculative statements about other procedures without specific reference to the facts of the investigation. These arguments overlook not only the specific uses of other procedures outlined in the affidavits, but also the purpose of the statutory necessity requirement.

■ This circuit held in *United States v. Daly*, 535 F.2d 434, 438 (8th Cir.1976) that the necessity requirement of section 2518 was meant to insure that wiretaps are not routinely employed as the initial step in an investigation. Thus, while the statute does require that normal investigative procedures be used first, it does not require that law enforcement officers exhaust all possible techniques before applying for a wiretap. *Leisure*, 844 F.2d at 1356; *United States v. O'Connell*, 841 F.2d 1408, 1415

(8th Cir.), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988), *cert. denied,* — U.S. ——, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989). The government is simply not required to use a wiretap only as a last resort. *United States v. Matya,* 541 F.2d 741, 745 (8th Cir.1976), *cert. denied,* 429 U.S. 1091, 97 S.Ct. 1101, 51 L.Ed.2d 536 (1977). Whether the statutory requirement is met is to be determined by the issuing judge in a commonsense manner, and the determination is a finding of fact, which can be reversed only if clearly erroneous. *United States v. Davis,* 882 F.2d 1334, 1343 (8th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1472, 108 L.Ed.2d 610 (1990); *Garcia,* 785 F.2d at 223.

■ We are satisfied from the affidavits that electronic surveillance was not employed as the initial step in the investigation of this conspiracy. Rather, the affidavit of December 9, 1986, provides an extensive list of other procedures which were either tried and proved unsuccessful, or not used because they were unlikely to succeed or were too dangerous. Physical surveillance, toll records, pen registers and confidential informants were all used in the investigation, but they failed to disclose the scope of the conspiracy and all the persons involved. Affidavit of December 9, 1986, at ¶ 19(c), (d), (i). Other normal procedures, namely, personal interviews, use of a federal grand jury, and use of an undercover agent, were all rejected as either unlikely to succeed or too dangerous. *Id.* at ¶ 19(a), (b), (h). In opposition to the affidavit, appellants suggest only that these procedures were available. That a technique is possible, however, does not mean that it is likely to succeed, *Daly,* 535 F.2d at 438, nor does its theoretical possibility consider whether it is too dangerous. *Garcia,* 785 F.2d at 223. The statute does not require that the government engage in futile or dangerous investigative techniques before applying for a wiretap.

Given the recital of investigative procedures used, and of those not used because they were either unlikely to succeed or too dangerous, we cannot say that the issuing judge's determination that the necessity requirement was met was clearly erroneous. *See, e.g., Leisure,* 844 F.2d at 1356 (failure of surveillance, pen registers, and toll records sufficient); *Jones,* 801 F.2d at 315 (use of informants, toll records, and physical surveillance sufficient); *Daly,* 535 F.2d at 438 (physical surveillance, toll records, consent recordings and the use of an undercover agent sufficient). Although several normal investigative procedures were used, they failed to reveal the scope of the conspiracy and the persons involved. *See O'Connell,* 841 F.2d at 1414–15; *Matya,* 541 F.2d at 745. Thus, we are satisfied that electronic surveillance was not routinely employed as the initial step in this investigation, and that the statutory requirements of 18 U.S.C. § 2518(1)(c) were satisfied.

We are also not persuaded by the argument that the affidavits contain only conclusory information about the investigative procedures used. While the affidavits explain in general terms why some of the procedures have failed in other investigations and would likely fail in this case, the statute does not require more. Appellants apparently argue that the only way a procedure can be shown to "reasonably appear to be unlikely to succeed" is to show specifically that it was tried and that it failed. The plain language of the statute belies any such argument. Moreover, the affidavits do provide particular instances in which normal procedures were used and did in fact fail. The affidavit of December 9, 1986, for instance, provides that toll records obtained from the telephones used by Wright failed to reveal the scope of the conspiracy or the persons involved. Affidavit of December 9, 1986, at ¶ 19(d). Physical surveillance of Wright failed to reveal the identity of his criminal associates, and neighborhood residents twice called the police when they detected surveillance vehicles near Wright's residence. Affidavit of January 9, 1987, at ¶ 7(a). Surveillance of Clara Davis also proved difficult when surveillance officers were detected by her neighbors. Affidavit of February 12, 1987, at ¶ 7(a). Given these and other particular references in the affidavits, we are satisfied that, on the whole,

the affidavits are sufficiently specific that normal investigative procedures were in fact used.

#### 4. Minimization

■ Finally, appellant Macklin argues that the government failed to minimize its interceptions as required by 18 U.S.C. § 2518(5). The statute provides that the surveillance "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception." *Id.* § 2518(5). "Communications not otherwise subject to interception" are those which do not concern the offense under investigation. *See Id.* § 2518(3)(a), (b). Macklin relies heavily on the fact that of over one thousand conversations recorded, only 106 were used as evidence at trial. This proof, however, has little to do with whether the government conducted its surveillance as required by statute. Indeed, section 2518(5) does not require that all conversations recorded be introduced at trial, but rather that surveillance be limited, as much as possible, to conversations pertinent to the investigation. Whether the officers conducted the surveillance in such a way is to be determined by an objective, reasonableness standard. *Scott v. United States,* 436 U.S. 128, 137, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978). *See also O'Connell,* 841 F.2d at 1416; *Garcia,* 785 F.2d at 224.

■ In considering whether the government's conduct was reasonable, a reviewing court must consider a variety of factors, including the scope of the enterprise, the agent's reasonable expectation of the content of a call, the extent of judicial supervision, length and origin of a call, and use of coded or ambiguous language. *Scott,* 436 U.S. at 140, 98 S.Ct. at 1724; *O'Connell,* 841 F.2d at 1416–17; *Garcia,* 785 F.2d at 224. More extensive wiretapping is reasonable when the investigation focuses on determining the scope of a widespread conspiracy. *Scott,* 436 U.S. at 140, 98 S.Ct. at 1724. The same is true when the conversations are in the jargon of the drug trade. *United States v. Losing,* 539 F.2d 1174, 1180 (8th Cir.1976). Thus, the

government's conduct could be reasonable even if the total number of conversations intercepted contained a high percentage of nonpertinent calls. *Scott,* 436 U.S. at 140, 98 S.Ct. at 1724; *O'Connell,* 841 F.2d at 1417.

■ Macklin refers us to no evidence in the record which suggests that the agents who conducted the electronic surveillance failed to act reasonably. Indeed, the only evidence in the record regarding minimization suggests otherwise. The affidavits all properly contain a recital that interceptions will be minimized in accordance with the statute, and the orders authorizing surveillance require that interception be minimized. The record contains several reports submitted to the district court which contain figures on the total number of calls intercepted and the number which were pertinent. These reports suggest that while some nonpertinent calls were intercepted, many of the nonpertinent calls were extremely short, and impossible to minimize. Because Macklin does not suggest otherwise, his argument, unsupported by the record, is without merit.

### B. Trunk Search

Defendant Williams argues that his fourth amendment rights were violated when his luggage, which contained cocaine, was seized from the trunk of a car belonging to Clara Davis. The seizure was made on March 25, 1987, the day Williams flew from Los Angeles to St. Louis with a shipment of cocaine to be delivered to Davis. He arrived around 5:30 a.m., but the airline lost his luggage. Williams filled out the standard claim forms, registered himself at the Northwest Inn in St. Louis, made arrangements for hotel personnel to pick up his luggage when it arrived in St. Louis, and then took a taxi to Davis' residence. When the Northwest Inn later notified Williams that it had received his luggage, Williams and Davis drove Davis' Mercedes–Benz to the Northwest Inn to collect the cocaine, and to transact a sale with Michael Batchman. After Williams sold two kilograms to Batchman from room 353 at around 2:30 p.m., they took the elevator to

the hotel lobby, and proceeded to the parking lot. Batchman was arrested as he was driving away from the hotel. Williams put the luggage in the trunk of the Mercedes–Benz, and then proceeded back into the hotel. There, he and Davis were arrested near the elevator, in an enclosed area off the hotel lobby.

The alleged fourth amendment violation stems from the events surrounding the arrest of Williams and the seizure of the Mercedes–Benz. Williams points to evidence in the record which indicates that the trunk of the car was opened at the hotel parking lot, before a warrant was obtained for its search. Davis testified on cross-examination that when she got off the elevator, where she was arrested, she heard the burglar alarm on her car sounding, indicating to her that the trunk had been opened without the key. Trial Transcript, vol. 8, at 54. F.B.I. Agent Long, who was at the hotel when Davis and Williams were arrested, testified that the trunk of the car had been opened, but was closed within a short time after the alarm sounded. *Id.* vol. 11, at 91. Because a group of twenty or twenty-five officers surrounded the car at the time the alarm sounded, Agent Long could not say who opened the trunk, or how it was opened. The car was impounded, however, and taken to F.B.I. headquarters in St. Louis. A magistrate issued a search warrant at 5:40 p.m., and the luggage belonging to Williams was then taken out of the trunk and searched, yielding eight kilograms of cocaine.

Williams attacks the search in broad terms. He is not specific whether he challenges a warrantless search of the trunk, or of his luggage.[6] Williams filed a motion to suppress the cocaine found in his luggage, as well as a motion to compel the testimony of Davis at a suppression hearing on his motion, set for September 10, 1987. In preparation for the suppression hearing, Williams had Davis served with a subpoena on November 6, 1987, which the government moved to quash on November 23, 1987. On January 4, 1988, the magistrate recommended that the subpoena be quashed. Clara Davis did not testify before trial.[7]

■ Williams appeals both the district court's grant of the government's motion to quash, and its denial of his motion to suppress. Concerning the motion to quash, Williams argues that his sixth amendment right to compulsory process was violated when Davis was not compelled to testify prior to trial. In granting the motion to quash, the district court found that Williams had not shown that the testimony of Davis would be both material and favorable to his motion. We agree with the district court that Williams has no absolute right to production of a witness, and that his sixth amendment right to compulsory process is denied only upon a showing that the testimony of the witness sought would be both material and favorable. *United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982). *See also United States v. Capozzi,* 883 F.2d 608, 614–15 (8th Cir.1989); *Perry v. Lockhart,* 871 F.2d 1384, 1386–87 (8th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 378, 107 L.Ed.2d 363 (1989); *Wright v. Lockhart,* 854 F.2d 309, 312 (8th Cir.1988); *United States v. Rubin,* 836 F.2d 1096,

6. In his motion to suppress, Williams protests the "seizure of contraband items from two automobiles." Motion to Suppress, April 14, 1987, at 2. On appeal, Williams refers in his brief to the facts surrounding the opening of the trunk of the Mercedes–Benz at the hotel, Brief for Appellant Williams at 11, and argues that "any law enforcement official who willfully opened the trunk of the Davis' [sic] automobile or opened any luggage, baggage or grip therein, did so illegally." *Id.* at 17. In his reply brief, Williams characterizes his motion to suppress as challenging the "validity of the search and seizure of his luggage from the trunk of Clara Rockette Davis' automobile under the Fourth Amend-

ment." Reply Brief at 4. None of these characterizations make clear whether Williams challenges an improper search of the trunk, his luggage, or both.

7. Williams made one more attempt during trial to compel Davis to testify outside the presence of the jury. Trial Transcript, vol. 6, at 91. Counsel told the court that he suspected that the luggage had been searched prior to issuance of the warrant. *Id.,* at 92–93. The district court, however, denied the request, finding that the court was in no position to compel Davis' testimony. *Id.,* at 95.

1101 (8th Cir.1988). Williams produced no more than an assertion by counsel that the testimony of Davis would be favorable to his motion,[8] and thus failed to meet his burden. Indeed, Davis' testimony at trial did not support Williams' claim that his luggage was searched at the hotel. Beyond indicating that she heard the car alarm sounding when she was arrested, Davis could say nothing about what the agents did. In fact, Davis testified that from where she was arrested, she could not even see the car. Trial Transcript, vol. 8, at 55. Thus, we find no abuse of discretion in granting the government's motion to quash. *See United States v. Bass,* 472 F.2d 207, 211 (8th Cir.), *cert. denied,* 412 U.S. 928, 93 S.Ct. 2751, 37 L.Ed.2d 155 (1973).

Williams is left arguing that the district court erred in denying his motion to suppress.[9] We note initially that while Williams may have a legitimate expectation of privacy in his luggage,[10] he has no such legitimate expectation of privacy in the trunk of the Mercedes–Benz, which belonged to Davis.

■ Williams bears the burden of proving a legitimate expectation of privacy. *Rawlings v. Kentucky,* 448 U.S. 98, 104–05, 100 S.Ct. 2556, 2561–62, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois,* 439 U.S. 128, 131 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978). *See also United States v. Fahnbulleh,* 748 F.2d 473, 477 (8th Cir.1984), *cert. denied,* 471 U.S. 1139, 105 S.Ct. 2685, 86 L.Ed.2d 702 (1985). With regard to the Mercedes–Benz, Williams has simply not met this burden. In *Rakas,* the Supreme Court held that because fourth amendment rights are personal and cannot be vicariously asserted, *Rakas,* 439 U.S. at 133–34, 99 S.Ct. at 425–26, a person has no reasonable expectation of privacy in an automobile belonging to another. "Like the trunk of an automobile, these are areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy." *Id.* at 148–49, 99 S.Ct. at 433. Thus, in *Fahnbulleh,* we held that where defendants had no possessory interest in the vehicle searched, they had no legitimate expectation of privacy therein. *Fahnbulleh,* 748 F.2d at 477. Furthermore, we have held that to have a legitimate expectation of privacy by way of a possessory interest, defendant must have possession of the vehicle and the keys. *United States v. Rose,* 731 F.2d 1337, 1343 (8th Cir.), *cert denied,* 469 U.S. 931, 105 S.Ct. 326, 83 L.Ed.2d 263 (1984); *United States v. Williams,* 714 F.2d 777, 779 n. 1 (8th Cir. 1983).

Williams was presented with numerous opportunities to establish that he had a legitimate expectation of privacy in the Mercedes–Benz. He has failed to do so. Whether Williams had a reasonable expectation of privacy in the trunk was first raised by the government at a hearing on its motion to quash the subpoena obtained by Williams for Davis. The government noted that since Williams did not own the Mercedes–Benz from which his luggage had been seized, and did not claim ownership, he had no legitimate expectation of privacy in it. Transcript of Hearing on Motion to Quash, December 4, 1987, at 6. Williams responded merely that his expectation of privacy was based on his luggage

---

**8.** Williams produced an affidavit, signed by counsel, that counsel believed that the testimony of Davis would be both material and favorable to the motion.

**9.** Although counsel for the government indicated at oral argument that the district court did not rule on the motion to suppress until after trial, the record, although not entirely clear, indicates otherwise. The magistrate recommended that it be denied in its review and recommendation of May 9, 1988. The district court apparently denied the motion on August 15, 1988, in its order adopting the magistrate's review and recommendation. But the court also denied the motion during trial. Following a discussion out of the presence of the jury during which the district court admitted an affidavit by Williams as an offer of proof, the court said: "I'm going to deny the motion to suppress." Trial Transcript, vol. 12, at 103–04. Even if the district court had not denied the motion until after Davis had testified, given her testimony that she could not even see the car when she was arrested, Williams suffered no prejudice from any delay.

**10.** *See infra* note 12.

being in the trunk. *Id.* at 10.[11] Given a clear lack of evidence that Williams had any interest in the Mercedes–Benz, his fourth amendment argument based on any warrantless opening of the trunk must fail.

As to the search of his own luggage,[12] Williams presented almost no evidence to the district court in support of his assertion that the luggage was opened prior to a warrant being obtained on March 25, 1987. The record does not indicate that he presented evidence at the suppression hearing, nor did Williams testify at trial. The only evidence offered by Williams to support the merits of his fourth amendment challenge came during trial, when counsel presented the district court, out of the presence of the jury, with an offer of proof on the motion to suppress. Counsel offered a handwritten affidavit, signed by Williams, that when he was arrested at the Northwest Inn, Williams saw the trunk of the Mercedes–Benz open, and that he "saw the suitcase in an opened condition." Affidavit of September 26, 1988. Counsel stated: "[T]hat completes by way of offer of proof the testimony that we would have in support of the motion to suppress." Trial Transcript, vol. 12, at 101. Given the absence of any other proof by Williams in support of his motion to suppress, we find that the district court's factual determination was not clearly erroneous. *See United States v. Munoz,* 894 F.2d 292, 296 (8th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 1934, 109 L.Ed.2d 297 (1990); *Laing v.*

*United States,* 891 F.2d 683, 685 (8th Cir. 1989).

## III. CONCLUSION

Appellants present a number of other arguments, each of which we have carefully considered, and which we find to be without merit. Accordingly, for the reasons stated, the judgment of the district court is affirmed.

**11.** The government also addressed Williams' expectation of privacy in its supplemental memorandum of December 18, 1987, on its motion to quash. The government therein requested that the district court dismiss the motion to suppress based on Williams' lack of an expectation of privacy in the car. Neither the magistrate's review and recommendation of January 4, 1988, on the motion to quash, nor his review and recommendation of May 9, 1988, on the motion to suppress, addresses Williams' legitimate expectation of privacy in the car. Nor has either party cited this court to any district court ruling on the government's request.

**12.** Since the district court did not expressly find that Williams had an expectation of privacy in luggage in the trunk, we need not decide this question. Regardless of whether the issue of

Williams' expectation of privacy is best characterized as a separate, threshold matter of "standing," *see Rawlings,* 448 U.S. at 111–12, 100 S.Ct. at 2564–65 (Blackmun, J., concurring), or as part of the merits of his fourth amendment argument, *see Rawlings,* 448 U.S. at 106, 100 S.Ct. at 2562; *Rakas,* 439 U.S. at 138–39, 99 S.Ct. at 427–28, we need hold only that the district court properly denied the motion to suppress based on the absence of proof by Williams that any improper search of his luggage occurred. Although the issue of Williams' expectation of privacy may logically come first, because Williams has failed to prove that the police acted illegally, whether *his* fourth amendment rights are implicated does not matter. *See Rawlings,* 448 U.S. at 112, 100 S.Ct. at 2565 (Blackmun, J., concurring).