_____

No. 95-1989EM
_____

John Alvin Payne,                    *
                                     *
            Appellant,               *
                                     *  On Appeal from the United
      v.                             *  States District Court
                                     *  for the Eastern District
                                     *  of Missouri.
United States of America,            *
                                     *
            Appellee.                *

_____

Submitted:  January 9, 1996

Filed:  March 4, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, BOWMAN, Circuit Judge, and JONES,[*] District Judge.
_____

RICHARD S. ARNOLD, Chief Judge.


     John Alvin Payne was convicted under the Continuing Criminal Enterprise statute ("CCE"), 21 U.S.C. § 848, and is serving a 50-year sentence with no chance of parole for his managerial role in an interstate cocaine-distribution conspiracy. He was also convicted and sentenced for several other related drug crimes.[1] He

_____

     *The Hon. John Bailey Jones, United States District Judge for the District of South Dakota, sitting by designation.

     [1]Mr. Payne was also convicted and sentenced for one count of conspiracy to distribute and possess with intent to distribute cocaine (20 years), 21 U.S.C. § 841(a)(1); four counts of distribution of cocaine (15 years for each count), 21 U.S.C. § 841(a)(1); and three counts of structuring financial transactions to evade income reporting requirements (five years for each count), 31 U.S.C. § 5324(a)(3). He was acquitted on money-laundering

filed a motion for postconviction relief under 28 U.S.C. § 2255, claiming that his trial lawyer was unconstitutionally ineffective. The District Court[2] rejected all but one of Mr. Payne's ineffective-assistance claims without an evidentiary hearing and, after a hearing, concluded that Mr. Payne's lawyer had adequately informed him of his right to testify.[3] Mr. Payne now appeals, and we affirm.

I.

Mr. Payne and his brother owned a hotel in Los Angeles. This hotel was the headquarters for a sophisticated drug operation managed by Mr. Payne.[4] This is how the operation worked: First, couriers would move Mr. Payne's cocaine from Los Angeles to St. Louis. There, Clara Davis would take the cocaine from the couriers and disperse it to local distributors. She also collected Mr. Payne's cut of the proceeds from the distributors and sent this money back to Los Angeles.

After several years' investigation the government applied for

---

charges. 18 § U.S.C. §§ 371, 1956(a)(1)(A) & (a)(2). All of these sentences were concurrent with each other and with the sentence on the CCE charge.

[2]The Hon. Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri; the Hon. Lawrence O. Davis, United States Magistrate Judge.

[3]The District Court agreed with Mr. Payne that his conviction and sentence for conspiracy to distribute and possess with the intent to distribute cocaine, 21 U.S.C. § 846, violated the Double Jeopardy Clause because that offense was included in the CCE charge, 21 U.S.C. § 848. The District Court, accordingly, vacated the § 846 conviction. This issue is not before us.

[4]See United States v. Macklin, 902 F.2d 1320 (8th Cir. 1990) (affirming Mr. Payne's conviction and describing the enterprise), cert. denied, 498 U.S. 1031 (1991).

permission to wiretap Ms. Davis's and Lee Autry Wright's (one of the St. Louis distributors) telephones. After a few months' surveillance, Ms. Davis and Terrell Williams (one of the couriers), were arrested in St. Louis as Mr. Williams was making a delivery. Ms. Davis went into the federal witness-protection program and was the government's chief witness at trial. She testified about the drug enterprise itself and, most importantly, interpreted and explained the over one hundred brief, often cryptic, taped telephone conversations which were the centerpiece of the government's case.

At trial, Mr. Payne's defense was that he was innocent of all charges and that Ms. Davis was an untrustworthy "snitch" who was setting him up and who actually was the "mastermind" of the enterprise. Mr. Payne's lawyer, David Chesnoff, tried to convince the jury of this theory by vigorously cross-examining Ms. Davis. He also argued, in his closing statement, that the government did not present evidence that Mr. Payne knew about his co-defendants and their drug-dealing, let alone that he conspired with or supervised them. Mr. Payne did not testify; in fact, Mr. Chesnoff presented no evidence or testimony. This "snitch strategy" was unsuccessful. We affirmed Mr. Payne's convictions on direct appeal. Macklin, 902 F.2d at 1331.

Mr. Payne now believes he would have been better served by a different trial strategy. In his § 2255 motion, Mr. Payne argued that he received ineffective assistance of counsel because Mr. Chesnoff failed to (1) advise him of his right to testify; (2) present evidence that Mr. Payne was not the organizer, supervisor, or manager of the drug enterprise; (3) request several CCE-related jury instructions; (4) investigate the government's wiretap application and interview potential witnesses whose testimony supposedly could have undercut the application; (5) argue that there were several distinct conspiracies rather than one complex operation; (6) object to the government's alleged proof of several

conspiracies; and (7) conduct an independent investigation or discuss the merits of Mr. Payne's case with him before trial. The District Court rejected all these claims, except the first, without a hearing. After a March 1995 evidentiary hearing, the District Court denied the first claim as well.[5]

## II.

The adversary system is, in many ways, a gamble which presumes able and zealous lawyers for each side. Our Constitution hedges this gamble through the Sixth Amendment right to counsel, which "assures the fairness, and thus the legitimacy, of our adversary process." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). Therefore, counsel must be "ready and able to submit the prosecution's case to the `crucible of meaningful adversarial testing,' [or] there can be no guarantee that the adversarial system will function properly to produce just and reliable results." Driscoll v. Delo, 71 F.3d 701, 706 (8th Cir. 1995) (citations omitted).

The well-established framework for analyzing ineffective-assistance claims reflects the Sixth Amendment's focus on assuring the "fairness" and "legitimacy of our adversary system." See Strickland v. Washington, 466 U.S. 668 (1984). The Strickland standard, "although by no means insurmountable, is highly demanding." Kimmelman, 477 U.S. at 382. To prove ineffective assistance, a petitioner must prove both incompetence and prejudice; he must "establish that counsel's performance fell below professional standards and that ineffective performance prejudiced his defense." Thompson v. United States, 61 F.3d 586, 587 (8th Cir. 1995). His lawyer's unreasonable performance must

---

[5]The District Court added, "[q]uite frankly, it appears to me that this motion is one of the most flagrant abuses of the use of judicial resources that I have seen in some time."

"undermine[] our confidence in the outcome of the proceeding." Ibid. We presume attorneys provide effective assistance, and will not second-guess strategic decisions or exploit the benefits of hindsight. Ibid.

A.

First, Mr. Payne claims Mr. Chesnoff failed to discuss in appropriate detail the strategic implications of Mr. Payne's choice not to testify about his role in the conspiracy. The District Court rejected this claim after an evidentiary hearing. In Mr. Payne's view, the government failed to prove that he managed, organized, or supervised five or more people as part of a continuing criminal enterprise. See 21 U.S.C. § 848(c)(2)(A). Instead, he argues, the evidence showed only that he "fronted" (sold on credit) drugs to several unconnected people.[6] And, Mr. Payne insisted at oral argument, even if he did supervise or manage others as part of a drug enterprise, he supervised only four others, not five.[7]

Mr. Payne insists that, had he been informed about the CCE statute's "managerial" element and advised that "fronting" drugs is not enough to prove this element, he would have testified at trial. He claims he would have described his role in the conspiracy, thereby corroborating the information on the tapes. This, he thinks, would have made his testimony believable. He would have admitted his involvement in drug trafficking and acknowledged supervising four - but not five - other persons. He recognizes, of

---

[6]"Fronting" drugs, by itself, does not amount to organizing, managing, or controlling under the CCE statute. United States v. Jones, 801 F.2d 304, 308 (8th Cir. 1986).

[7]At oral argument, Mr. Payne conceded that he may have supervised Terrell Williams, Donna Marks (a second courier), Ms. Davis, and his brother, Thomas Payne, who occasionally collected Mr. Payne's money from Ms. Davis.

course, that his testimony would have guaranteed conviction and long prison terms for most of the crimes charged. But, he asserts, by testifying, he would have convinced the jury to acquit him on the CCE charge, which carries the most severe penalty (50 years without parole).

We agree with the District Court that this claim fails because Mr. Payne has not shown deficient performance and prejudice. Mr. Chesnoff told Mr. Payne that he had the right to testify - indeed, Mr. Payne admits he already knew this. In fact, Mr. Payne testified on his own behalf in a 1977 criminal trial. Mr. Payne also admitted at the evidentiary hearing that he knew the CCE statute requires the government to prove he managed or supervised five people. Still, he never asked to testify. Instead, after discussing the importance of keeping the jury from hearing the very damaging tapes again, Mr. Payne and Mr. Chesnoff agreed to "try to win the whole ball of wax" by painting Ms. Davis as a "snitch." We agree with the District Court that, given the alternatives, this strategy was not unconstitutionally unreasonable.[8] See Strickland v. Washington, 466 U.S. at 690 (reasonable strategic decisions are "virtually unchallengeable").

Not only was Mr. Chesnoff's performance reasonable, it did not prejudice Mr. Payne. We do not believe that if Mr. Chesnoff had discussed the managerial element in more detail, or told Mr. Payne that "fronting" does not satisfy that element, Mr. Payne would have admitted elaborate drug-dealing at trial, hoping the jury would believe a confessed drug-dealer's claim that he supervised four - but not five - others in his operation. This claim, to put it

---

[8]The Court concluded the hearing by observing:

It is my opinion that the trial strategy that was utilized in this case, . . . was probably one of the few strategies that had much chance of success on the merits, . . . I am convinced that whatever happened in this matter, there was no ineffective assistance of counsel.

mildly, strains credulity.  And even if Mr. Payne <u>had</u> testified, we do not believe there is any reasonable chance that the jury would have acquitted him on the CCE charge.[9]  We do not doubt that, looking back on it, Mr. Payne thinks he should have adopted a different strategy.  But we suspect that if Mr. Chesnoff <u>had</u> advised Mr. Payne to testify, admit drug-dealing, and hope for a CCE acquittal, Mr. Payne would still be arguing ineffective assistance of counsel.  See, <u>e.g.</u>, <u>Nazarenus v. United States</u>, 69 F.3d 1391, 1397 (8th Cir. 1995) (petitioner claimed his lawyer was ineffective for advising him to testify, thereby exposing him to damaging cross-examination); <u>Krimmel v. Hopkins</u>, 44 F.3d 704, 710 (8th Cir.), <u>cert. denied</u>, 116 S. Ct. 578 (1995).  Mr. Payne has not "undermined our confidence in the outcome of the proceeding," <u>Thompson</u>, 61 F.3d at 587, and so this ineffective-assistance claim fails.

B.


The District Court denied Mr. Payne's other ineffective-assistance claims without a hearing.  We review the District Court's decision to deny a hearing for abuse of discretion, and we review <u>de novo</u> the Court's rejection of the claims themselves.  <u>Ruiz v. Norris</u>, 71 F.3d 1404, 1406 (8th Cir. 1995).  In § 2255 cases, the petitioner is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle him to relief."  <u>Wade v. Armontrout</u>, 798 F.2d 304, 306 (8th Cir. 1986).  However, a "claim may be dismissed without an evidentiary hearing if the claim is inadequate on its face . . .."  <u>Shaw v. United States</u>, 24 F.3d 1040, 1043 (8th Cir. 1994).

Because Mr. Chesnoff's decision to argue Mr. Payne's innocence

---

[9]We note that this Court already rejected, without discussion, Mr. Payne's sufficiency-of-the-evidence challenge to his CCE conviction.  <u>Macklin</u>, 902 F.2d at 1331.

and to portray Ms. Davis as an untrustworthy snitch was reasonable, and Mr. Payne has not undermined our confidence in the verdict, it follows, we think, that the District Court did not abuse its discretion by denying most of Mr. Payne's claims without an evidentiary hearing. For example, Mr. Payne claims that Mr. Chesnoff was ineffective for "failing to present a defense to the managerial element of the [CCE] charge." Again, we disagree; this choice was reasonable.[10] Similarly, it was reasonable not to argue that the evidence showed several distinct conspiracies rather than one complex operation; such an argument would have undercut Mr. Payne's "snitch" defense. We are also unpersuaded by Mr. Payne's claims relating to jury instructions he thinks Mr. Chesnoff should have requested. The District Court did instruct the jury on the meaning of the terms "organizer," "manager," and "supervisor," and it was reasonable for Mr. Chesnoff not to request different instructions. Such a request would have made no difference; it certainly would not have helped Mr. Payne's "snitch" defense. Finally, it was reasonable not to request a unanimity instruction regarding the five persons allegedly under Mr. Payne's supervision or management. Mr. Payne has not alleged any possibility of jury confusion which might have required such an instruction, see United States v. Hiland, 909 F.2d 1114, 1139 (8th Cir. 1990), and, once more, such an instruction might have been thought inconsistent with Mr. Payne's defense. After a thorough de novo review, we think these claims are all inadequate on their face, and we agree with the District Court that no evidentiary hearing was required.

C.

We think Mr. Payne's remaining claim requires a brief discussion. Mr. Payne filed a motion before trial to suppress the

---

[10]We note that, in his closing statement, Mr. Chesnoff did suggest that the government had not proved supervision or management.

taped phone conversations. He requested a hearing under <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), claiming that the affidavit supporting the government's wiretap application contained fabricated statements. In support, Mr. Payne submitted six affidavits attacking particular allegations in the government's affidavit.[11] The Magistrate Judge, after noting that the government's 43-page affidavit refers to 10 confidential sources, concluded that "even without the statements challenged by defendant Payne, it would appear overwhelmingly that there would still remain more than adequate probable cause for the ordering of electronic surveillance by the District Court." The District Court adopted the Magistrate Judge's recommendation, and denied Mr. Payne's motion to suppress.

Mr. Payne now claims Mr. Chesnoff was ineffective because he never interviewed witnesses whose names and possible testimony Mr. Payne supplied and whose affidavits could have undermined the government's wiretap application. More generally, he asserts that Mr. Chesnoff failed to investigate the facts underlying the government's application for the wiretap. Instead, Mr. Payne had to obtain the affidavits himself. Mr. Payne contends that had Mr. Chesnoff provided effective assistance, the motion to suppress would have been supported by more and better affidavits,[12] which would have refuted facts in the government's wiretap application,

---

[11]Mr. Payne submitted affidavits from Lee Autry Wright, Louzar Burnes, Dedrick Battle, Joann Spencer, and Loretta Herd. All these people, alleged in the government's affidavit to be involved in drug-dealing with Mr. Payne, denied involvement in drug-dealing. Mr. Payne also included Vernon Whitlock's affidavit, in which he denied, contrary to the government's affidavit, making any statements against Mr. Payne.

[12]Mr. Payne claims that had Mr. Chesnoff conducted a reasonable investigation, he would have obtained additional affidavits from Larry Nick, Isaac Allmon, Jr., and Randall Stuntzen, swearing that "no law enforcement officer had ever questioned any of them concerning John Payne, and that they had no business relationship with John Payne."

earned him a <u>Franks</u> hearing, and resulted in the suppression of the key evidence against him.

There are few <u>per se</u> or "bright-line" rules here; ineffective-assistance cases "turn on their individual facts." <u>Sanders v. Trickey</u>, 875 F.2d 205, 209 (8th Cir.), <u>cert.</u> <u>denied</u>, 493 U.S. 898 (1989). Even if Mr. Chesnoff unreasonably refused to interview witnesses, Mr. Payne still must show a reasonable probability that, but for his lawyer's alleged poor performance, the District Court would have held a <u>Franks</u> hearing and suppressed the tapes. See <u>United States v. Owens</u>, 882 F.2d 1493, 1497-1500 (10th Cir. 1989) (holding that because defendant's <u>Franks</u> claim would have failed, his ineffective-assistance claim also fails). No <u>Franks</u> hearing is required when a court concludes, after disregarding the contested statements, that there is still sufficient material in the affidavit to support a finding of probable cause. See <u>United States v. Ozar</u>, 50 F.3d 1440, 1443-46 (8th Cir.), <u>cert.</u> <u>denied</u>, 116 S. Ct. 193 (1995). We have reviewed the government's affidavit and are convinced the Magistrate Judge correctly found that, even if Mr. Chesnoff had done everything Mr. Payne thinks he should have done, there easily remains more than adequate probable cause for the ordering of electronic surveillance. Therefore, Mr. Chesnoff's alleged failure to interview or at least investigate the witnesses does not amount to ineffective assistance of counsel.[13]

III.

We think Mr. Chesnoff's strategy and performance were, for the most part, reasonable and, in any event, our confidence in the verdict is not shaken by Mr. Payne's claims. The District Court's judgment is

---

[13]Mr. Payne also claims Mr. Chesnoff was ineffective for failing to conduct an independent investigation or discuss the merits of Mr. Payne's case with him before trial. Given our discussion in Part II.A and II.C, we reject this claim as well.

Affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.