UNITED STATES of America, Appellee,

v.

Terrance GRIFFIN, Appellant,

UNITED STATES of America, Appellee,

v.

Joseph H. DONNELL, Appellant,

UNITED STATES of America, Appellee,

v.

Kevin COKES, Appellant.

Nos. 93–2852, 93–3068 and 93–3069.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 14, 1993.

Decided Feb. 28, 1994.

Rehearing Denied in Nos. 93-3068,
93-3069 April 8, 1994.

Counsel who represented the appellant in 2852 was John R. Cullom of Kansas City, MO; in 3068 and 3069, Glenn E. Bradford of Kansas City, MO.

Counsel who represented the appellee was Peter Ossorio of Kansas City, MO.

Before MAGILL, Circuit Judge, BRIGHT, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

Terrance Griffin, Kevin Cokes and Joseph Donnell were arrested for conspiracy to distribute cocaine base. All three entered pleas of guilty and cooperated with the FBI and other drug enforcement authorities in investigations of the drug conspiracy. In exchange for this cooperation, the government made 5K1.1 motions for downward departure at the sentencing hearings in all three cases. As a result, Griffin, Cokes and Donnell received sentences significantly below the guideline range and below the statutory ten-year mandatory minimum. The government later filed a motion for correction of sentence pursuant to Rule 35(b)[1] and requested a further reduction in the sentences for subsequent, substantial assistance.

The same district judge[2] who initially sentenced the appellants directed a magistrate judge to conduct hearings and to recommend a disposition for the Rule 35(b) motions. The magistrate judge issued findings of fact and conclusions of law recommending that the Rule 35(b) motions be denied as inappropriate. After an independent review of the record, the district court adopted the magistrate judge's report and denied the motions. Griffin, Cokes, and Donnell appeal contending that the Rule 35(b) motions were an integral part of their plea agreements and that the district court abused its discretion by denying the motions. We affirm.

The government filed the Rule 35(b) motions, thereby fulfilling any obligations it may have had under the plea agreement. The appellants concede that the district court was not bound to grant the Rule 35(b) motions. After a hearing, the magistrate judge concluded that the appellants had not provided subsequent, substantial assistance that would warrant further reductions in their sentences. The district court adopted this conclusion. The decision to grant or deny a Rule 35(b) motion is entirely within the discretion of the district court. *Goff v. United States*, 965 F.2d 604 (8th Cir.1992) (per curiam). Absent an abuse of that discretion,[3] the appellate courts cannot interfere. We find no evidence that the district court

---

**1.** Rule 35(b) states in part:

The court, on motion of the Government made within one year after the imposition of the sentence, *may* reduce a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense....
Fed.R.Crim.P. 35(b) (emphasis added).

**2.** The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

**3.** The appellants allege that the magistrate judge's report revealed bias against them. We read the magistrate judge's report differently. The magistrate judge chastised the government for bringing Rule 35(b) motions without adequate grounds. He rejected the government's contention that the willingness of the appellants to testify against co-conspirators constituted subsequent, substantial assistance. Instead, the magistrate judge concluded that this cooperation was part of the assistance contemplated by the 5K1.1 reduction granted by the district court. He also noted that the Rule 35(b) motion with regard to Griffin was time-barred. We cannot conclude that these findings constitute an abuse of discretion.

While chastising the government, the magistrate judge discussed in detail how he would have managed the plea agreements had he been the Assistant United States Attorney in charge of the case. We are troubled by this digression and by the weight that the magistrate judge seemed to place on an internal Justice Department memo issued by former Attorney General Thornburgh. However, we cannot agree with the appellants' contention that these comments amount to an abuse of discretion. Nothing in the record indicates any bias against these particular defendants, or, indeed, against any defendants. Furthermore, after an independent review of the record, the district court concluded that the 5K1.1 departures contemplated the cooperation that the government now raises as grounds for further reductions in sentence. The district judge who had responsibility for the initial sentencing is clearly in the best position to determine what kinds of cooperation the 5K1.1 departures encompassed.

abused its discretion in this case. Accordingly, the decision of the district court is affirmed.

BRIGHT, Senior Circuit Judge, dissenting.

I dissent.

The facts are undisputed.[1]

1. The federal prosecutor promised the defendants-appellants that he would make the appropriate motions to reduce the heavy drug sentence each faced if defendants assisted in the prosecution of other members of the drug conspiracy. Immediately, the defendants cooperated; the prosecutor made the necessary motions[2] to reduce defendants' sentences and the district court recognized and enforced the prosecutor's promises.[3]

2. The prosecutor further promised the defendants that if each provided further assistance in pending drug investigations, he would move for a second reduction in their sentences. The defendants gave additional assistance for other pending prosecutions. The prosecutor made the appropriate motions but the magistrate judge hearing the case determined, as a matter of fact and law, that the court could not honor the prosecutor's promises. The district court adopted the magistrate judge's findings and conclusions and denied further sentence reductions. This appeal followed.

In my view, the magistrate judge erred and the district court continued the error. I would therefore reverse and remand for reconsideration of the motions.

I.

The prosecutor represented to the magistrate judge that defendants Terrance Griffin

1. The appellee does not contest the facts or the prosecutor's right to move for the reduction in sentence. Appellee's claim of nonappealability fails. *United States v. Evidente*, 894 F.2d 1000, 1003–04 (8th Cir.1990) (determination that judge lacks power to reduce sentence is appealable pursuant to 18 U.S.C. § 3742). *See also Wade v. United States*, — U.S. —, —, 112 S.Ct. 1840, 1843–44, 118 L.Ed.2d 524 (1992) (constitutional due process issue raised by appellant makes case appealable).

2. These motions were brought under both U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e).

U.S.S.G. § 5K1.1 provides as follows:
*Substantial Assistance to Authorities (Policy Statement)*
Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
(1) the court's evaluation of the significance and usefulness of the defendant's assistance,
taking into consideration the government's evaluation of the assistance rendered;
(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
(3) the nature and extent of the defendant's assistance;
(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
(5) the timeliness of the defendant's assistance.
18 U.S.C. § 3553 provides in pertinent part:
(e) **Limited authority to impose a sentence below a statutory minimum.**—Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

3. Below are listed the applicable guideline range and the terms of imprisonment the defendants were actually sentenced:

| | Guideline Range | Sentence Received |
|---|---|---|
| Griffin | 135–168 months | 90 months |
| | (11 yrs, 3 mos–14 yrs) | (7 yrs, 6 mos) |
| Cokes | 235–293 months | 100 months |
| | (19 yrs, 7 mos–24 yrs, 5 mos) | (8 yrs, 4 mos) |
| Donnell | 151–181 months | 70 months |
| | (12 yrs, 7 mos–15 yrs, 1 mo) | (5 yrs, 10 mos) |

In each case, the convictions called for a mandatory minimum sentence of no less than ten years imprisonment. The harshness of the sentences under the guidelines rested in principal part on the weight of the crack attributed to each defendant in the conspiracy.

and Kevin Cokes provided additional and new assistance more than one year after the defendants had been initially sentenced.[4] The prosecutor also represented that under the arrangement made with Joseph Donnell, who assisted in getting Cokes to cooperate, Donnell would benefit from Cokes' further cooperation. Additional assistance from these defendants and others led to the preparation of cases against other drug defendants, who then pleaded guilty. Nevertheless, the prosecutor represented that assistance from these defendants gave the government important new information which benefitted the government in its additional prosecutions.

The magistrate judge rejected the defendants' claims for a second reduction, asserting that the additional assistance counted for nothing as a matter of law or fact. The magistrate judge's rationale appeared to rest solely on his own personal experience as an Assistant U.S. Attorney, who in that role, had made all deals "up front." In part, the magistrate judge said:

I would suggest, though, that in the future, Mr. Ossorio [Assistant United States Attorney presenting the motion], you might alert your fellow assistant United States attorneys that as was my practice and I know you love to hear this, when I was in that office, I always gave everybody the benefit *on the front end,* so that it was clear that I anticipated they would testify and they got the benefit for that testimony at the time the [§ 5K1.1] motion was filed, even though it hadn't been accomplished.

Motion Tr. (11/10/92), at 31 (emphasis added). Further, the magistrate judge claimed that the prosecutor's arrangement violated an Attorney General policy.

We reject this reasoning, as Fed.R.Crim.P. 35(b) contains no limitation excluding an ad-

ditional reduction of sentence when that defendant has already received a benefit for *prior* substantial assistance under § 5K1.1 or 18 U.S.C. § 3553(e).

Moreover, the asserted violation of the Attorney General's policy appears to be irrelevant and probably wrong. The policy violation of the prosecutor, as here asserted by the magistrate judge, may be a concern of the Department of Justice but is generally not binding on a judge who is limited to matters of fact and law in making sentencing decisions. *Cf. United States v. Lorenzo,* 995 F.2d 1448, 1453 (9th Cir.1993) (U.S. Attorney's Manual does not create any substantive or procedural right enforceable at law). Moreover, Attorney General Thornburgh's policy in part reads:

The most important departure is for substantial assistance by a defendant in the investigation or prosecution of another person. Section 5K1.1 provides that, upon motion by the government, a court may depart from the guidelines and may impose a non-guideline sentence. This departure provides federal prosecutors with an enormous range of options in the course of plea negotiations. Although this departure, like all others, requires court approval, prosecutors who bargain in good faith and who state reasons for recommending a departure should find that judges are receptive to their recommendations.

App. at 55–56.

Thus, the policy gives the prosecutor broad discretion in this area. Here, the prosecutor clearly acted in "good faith" and stated reasons for recommending departure. Thus, the alleged "policy" violation appears groundless.

The record indicates that the magistrate judge confused his function as a judge with his prior duties as a federal prosecutor.[5] This confusion led to his error in failing to

---

**4.** The prosecutor relied on a provision of Fed. R.Crim.P. 35(b), reading in pertinent part:

The court may consider a government motion to reduce a sentence made one year or more after imposition of the sentence where the defendant's substantial assistance involves information or evidence not known by the defendant until one year or more after imposition of sentence. The court's authority to reduce a

sentence under this subsection includes the authority to reduce such sentence to a level below that established by statute as a minimum sentence.

**5.** The following colloquy at the hearing on the motions is illustrative:

THE COURT: ... If there was a contemplation that [sic] [defendants pleading guilty un-

consider defendants' additional assistance before rejecting their pending motions. The district court adopted the magistrate judge's views and persisted in the error, as indicated above.

Accordingly, I would reverse and remand for reconsideration of the motions for reduction of the sentences. I would suggest a referral, if any, by the district judge, be made to a different magistrate judge.

## II.

### THE MYTH OF CONSISTENCY IN SENTENCES.

I take this opportunity to comment on the obvious unfairness of mandatory minimums and guideline sentencing. First, this case graphically punctures a myth that mandatory minimums and guideline sentences in drug cases result in equal treatment for offenders. The promise under federal law that *all* drug dealers and other drug offenders shall serve long prison terms as a strong deterrent in the so-called war on drugs is also false. As already observed, the defendants received heavy slashes in the guideline mandatory sentences through motions made by the prosecutor, accepted by the sentencing judge.[6]

In this case these defendants and others had something to sell—information on their former cohorts.[7] For that each became entitled to a motion for sentence reduction and

---

der an agreement] would testify, they should've gotten the benefit from that testimony on the front end. That's what they were getting, that's what this whole case was about.

The 35(b) motion has to do with if somebody is sitting in jail and suddenly they decide, well, I'm going to tell you about General Noriega and all the stuff that was going on in Panama, and I'm going to tell you before the grand jury, suddenly, you know, that's new information. That's not what we have here, though. I mean, not substantially, we don't have it here. This is just—

MR. CULLOM [Griffin's attorney]: Well—

THE COURT: This is just a poor way of doing business. It just is.

MR. CULLOM: With all due respect, I disagree with you on that. I think they have provided substantially [sic] assistance subsequent to the sentence.

THE COURT: Well—

MR. CULLOM: Those two convictions are proof of it.

THE COURT: I think it's still—the jury is still out, though, whether that information was made before they had their first downward departure.

MR. CULLOM: But their testimony hadn't been—

THE COURT: That doesn't matter though. I mean, that doesn't matter. Suppose a trial judge is taking these 5(k) motions [referring to U.S.S.G. § 5K1.1] and reducing the sentence, he doesn't think—that trial judge isn't thinking, John, well, I'm just going to give them the benefit of this information and reduce it as much as they were reduced in this case. And then if they come in and testify, I'm going to give them a further—there's no record of that here.

. . . .

THE COURT: Right. I think I get—I think I know what everybody was thinking here. The problem is I don't know that that's the appro-

priate tact to take, John. That's the whole issue. Does that rise to the level of subsequent substantial assistance? I don't think it does. And I haven't seen any case law that supports that. The fact that there—I mean, nobody gets in this business and debriefs people and gets them pled and gets them in front of a judge and sentenced and find—does a downward departure, and then says but, you know, but we're not contemplating they're going to testify about anything. I mean, that's absurd. That's absurd. No one would ever do that, see. But clearly, that apparently was what the U.S. attorney was saying, I think. I think that's what he was saying, that if you guys come in and you puke and you tell us everything you know, and I'm going to file 5(k) motion. And then if you go and you continue and you come to trial and you testify at trial, I'm going to file another motion under 35(b).

That is wrong. I don't think that's what the law is.

Motion Tr. at 32–33, 35.

**6.** Compared to the applicable minimum guideline sentence, the defendants received the following downward departures, by percentage:

Griffin: 135 months less 45 months = 33.3%
(11 yrs, 3 mos. less 3 yrs, 9 mos.)

Cokes: 235 months less 135 months = 57.4%
(19 yrs, 7 mos. less 11 yrs, 3 mos.)

Donnell: 151 months less 81 months = 53.6%
(12 yrs, 7 mos. less 6 yrs, 9 mos.)

*See also ante,* note 3.

**7.** We excerpt a portion of a letter written by the assistant prosecutor Peter Ossorio to the magistrate judge:

Dear [magistrate judge]:

initially received sentences well below the guidelines and the mandatory minimums. Further, as disclosed by the letter quoted in footnote 7, some of the conspiracy members had obtained additional sentence reductions.

I do not criticize this policy. Its rationales include "giving the prosecutor a powerful law enforcement tool, ... [and] providing a just reward for a cooperative defendant." *United States v. Kelley*, 956 F.2d 748, 755 (8th Cir. 1992). I must observe, however, that prosecutors, not federal judges, possess this awesome power to initiate reductions of prison sentences below mandatory minimums and below guideline ranges.

Some of the defendants in this case may or may not be the most culpable in the conspiracy. I do suggest, however, that at least one defendant bears heavy responsibility for the previously flourishing crack conspiracy. Some sense of fairness, compassion and honesty in sentencing compels the conclusion that other drug offenders may be deserving of a break, particularly first-time offenders, those low on the totem pole of the drug hierarchy with little culpability, people who have no information to sell, and other minor players who are fit subjects for rehabilitation because they have learned the lesson of their wrongful ways. These are persons who can be saved from years and years of imprisonment which benefits neither society nor the offender.

What kind of a criminal justice system rewards the drug kingpin or near-kingpin who informs on all the criminal colleagues he or she has recruited, but sends to prison for years and years the least knowledgeable or culpable conspirator, one who knows very little about the conspiracy and is without information for the prosecutors?

Imposing heavy sentences on first offenders who play only a minor role in an offense and who do not use any weapon wastes lives. The statistics are striking:

1. Low level, non-violent drug offenders account for 21.2% of the federal prison population. These small-time drug offenders often serve longer prison sentences than robbers, rapists and kidnappers.[8]

2. Statistics available from the Sentencing Commission on drug offenses indicate that of the 16,684 offenders sentenced in fiscal year 1992, a great percentage (41.3%) and a total of 6,897 persons had zero criminal

The plea tendered by the last defendant, Ronald E. Whitley, in the case of *United States of America v. Anthony S. Rashid, et al*, No. 90–171–01–CR–W–5, permits bringing to a close a series of prosecutions in this district involving a number of defendants in other cases who agreed to provide substantial assistance in the *Rashid* investigation and trial. To assist the court in reaching appropriate decisions regarding the pending cases, the following updated information is provided:

.... [Listing eleven defendants prosecuted in the drug conspiracy, including appellants, who received very substantial reductions in sentences and several who obtained second reductions in sentences for continuing assistance.]

All defendants made statements to authorities about their knowledge of the drug trafficking of Anthony S. Rashid and later, Frank H. Fore and Ronald E. Whitley....

App. at 9–10.

The letter specifically commented on the assistance rendered by defendants as follows:

Griffin: "(Substantial witness regarding Whitley bringing 'crack' to Kevin Cokes; corroborates much of Cokes' information)." *Id.* at 11.

Cokes: "(One of four most important witnesses regarding Whitley. Second most important witness in establishing the scale of the multi-kilo-gram 'crack' traffic between Houston and Kansas City in 1990–91)." *Id.*

Donnell: "(Useful information linking Terrance Griffin, Kevin Cokes and Ronald Whitley tending to corroborate Griffin and Cokes)." *Id.*

8. A news story appearing in U.S.A. Today reported on the Justice Department's report on mandatory minimum sentences (relating to 16,316 prisoners). Data from a table accompanying this story is reproduced below.

**Crime and punishment**
Non-violent drug offenders account for 21.2% of the federal prison population. Punishments for first-time drug offenses, compared with other offenses:

| Offense | Time served |
|---|---|
| Drugs | 60 months |
| Kidnapping | 57 months |
| Robbery | 51 months |
| Arson | 36 months |
| Racketeering/Extortion | 36 months |
| Sexual Abuse | 27 months |
| Assault | 24 months |
| Firearms | 15 months |
| Manslaughter | 12 months |

Dennis Cauchon, *Sentencing study treads cautiously*, U.S.A. Today, Feb. 7, 1994, at 4A.

history points, used no weapon, and played a non-aggravating role in the offense.[9]

3. These same statistics show that of those sentenced under the guidelines subject to mandatory minimum statutes, 34.7% of those sentenced—3,198 persons—had no criminal history points, used no weapon and played no aggravating role in the crime. We know that such offenders received sentences no less than five years, or no less than ten years, or no less than fifteen years and some no less than twenty years imprisonment, as called for by whatever mandatory minimum sentences applied in the case (based substantially on weight of drugs).

Our sentencing opinions have frequently recited the irrationality of the guidelines in drug sentences. New data demonstrate the frequency and regularity of lengthy sentences for non-violent crimes committed by first-time drug offenders.

These heavy sentences seem not to have served as a deterrent.[10] Again, this observer comments: the sentencing system is irrational; it "cries out for change.". *See United States v. Smith,* 997 F.2d 396, 399 (8th Cir. 1993) (Bright, J., dissenting) (citing and quoting Marc Miller & Daniel J. Freed, *Suggestions for the President and the 103rd Congress on the Guideline Sentencing System,* 5 Fed.Sent.R. 187 (Jan./Feb.1993)).

---

9. United States Sentencing Commission, *Defendants Sentenced under the Federal Sentencing Guidelines for Drug Offenses—Fiscal Year 1992.*

10. Recently, Philip B. Heymann, formerly a very high official in the Justice Department (second in command), as reported by the New York Times, "dismissed mandatory minimum prison sentences for many low-level drug offenders as almost useless in deterring crime." David Johnston, *Ex–Official Attacks Crime Bill·Backed by Clinton,* N.Y. Times, Feb. 16, 1994, at A1.