**Rodney THOMPSON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 94–2264.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1995.

Decided July 24, 1995.

John Osgood, Lee's Summit, MO, argued for appellant.

E. Eugene Harrison, Asst. U.S. Atty., Kansas City, MO, argued for appellee.

Before RICHARD S. ARNOLD, Chief Judge, MURPHY, Circuit Judge, and DAVIS,* District Judge.

RICHARD S. ARNOLD, Chief Judge.

Rodney Thompson appeals a District Court[1] order denying his 28 U.S.C. § 2255 petition, in which he alleged that his trial attorney had been ineffective. We affirm.

I.

The facts giving rise to Thompson's conviction are set forth in our opinion on his direct appeal challenging the sufficiency of the evidence to convict him. *United States v. Thompson,* 972 F.2d 201, 202–03 (8th Cir. 1992). We summarize them here briefly.

In the summer of 1990, postal inspectors discovered a package of crack cocaine ad-

---

* The Hon. Michael J. Davis, United States District Judge for the District of Minnesota, sitting by designation.

1. The Hon. Scott O. Wright, Senior United States District Judge for the Western District of Missouri.

dressed to "Tony Williams," and the inspectors made a controlled delivery. Alma Sumpter accepted the package, telling the inspector her son, Tony Williams, lived with her, and then signed "A. Williams" to the receipt. During the delivery the inspector recorded the conversation.

The inspectors then obtained a warrant and searched Ms. Sumpter's home shortly after the delivery. The package was still unopened. Ms. Sumpter denied having anything to do with the package and claimed that Rodney Thompson had told her to accept a package for "Tony Williams." Thompson was a friend of her son, who was, at the time of the delivery, incarcerated.

During the search, the inspectors found a scrap of paper with the name "Rodney" and a telephone number on it. They also found traffic tickets issued to Dion C. McKenzie with the name Erick Love on them and crossed out. Ms. Sumpter told the inspectors that the tickets belonged to Thompson and then agreed to call the number on the scrap of paper. This conversation was recorded as well.

Ms. Sumpter made the call and told a woman on the other end of the line that Thompson's package had arrived. Within fifteen minutes of the phone call Thompson was knocking on Ms. Sumpter's back door. The undercover agents immediately arrested him. As the agents left the apartment, Ms. Sumpter's regular mailman identified Thompson as the man who had yelled to him the day before from a roof top, asking about a package for Tony Williams.

During the trial, Ms. Sumpter testified that the inspector who delivered the package had misunderstood her. She claimed that she did not say the package was for her son, but for her son's friend. She blamed this alleged misunderstanding on the fact that she did not have her teeth in and could not speak as clearly as she might have otherwise.

## II.

■ For Thompson to prevail on his claim that his counsel was ineffective, he must establish that counsel's performance fell below professional standards and that ineffective performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Antwine v. Delo,* 54 F.3d 1357 (8th Cir.1995). When reviewing counsel's performance, we apply an objective standard of reasonableness, we do not use hindsight to question counsel's actions or second-guess counsel's strategic decisions, and the defendant must overcome a strong presumption that counsel provided effective assistance. *Strickland,* 466 U.S. at 689–90, 104 S.Ct. at 2065–66. If Thompson establishes that counsel's performance was deficient, we then ask whether the omission undermines our confidence in the outcome of the proceeding.

■ Thompson argues that his counsel was ineffective because counsel made the strategic decision not to play the taped conversation between Alma Sumpter and the postal inspector for the jury. Thompson argues the tape would have convinced the jury that Ms. Sumpter was a perjurer, covering up for her own son, and that the package was actually intended for Ms. Sumpter's son and not for him.

We do not see how playing the tape would have helped Thompson. The defense had already established the inconsistency between Ms. Sumpter's statement at the door and her statement on the witness stand through the testimony of the postal investigator, the jury knew that Alma Sumpter had pretended to know Tony Williams and that she had lied when she told the postal inspector that she was Williams's mother, and the jury was aware that Ms. Sumpter had a history of lying to protect her son. Playing the tape would not have established anything new of any significance.

It also appears that Thompson's counsel's decision not to play the tape was a reasonable strategic choice anyway. If the tape had been played it would have exposed evidence inconsistent with Thompson's theory that the drugs were for Ms. Sumpter's son. On the tape, the agent says that Ms. Sumpter told him that her son would be back shortly and that he had been hounding her about the package for a long time. Ms. Sumpter could not have been referring to her son, however, because he was in jail. Fur-

thermore, Thompson was the one who was coming over every day, not Ms. Sumpter's son.

Counsel's decision not to play the tape was a reasonable strategic decision and, in any case, did not prejudice the defense in the *Strickland* sense. We affirm.