_____

No. 95-1837WM
_____

Herbert Ross Montanye,      *
                                   *
        Appellant,         *
                                   *  On Appeal from the United
   v.                          *  States District Court
                                   *  for the Western District
                                 *  of Missouri.
United States of America,   *
                                   *
                                   *
        Appellee.          *

_____

Submitted:  November 15, 1995

Filed:  February 20, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, BRIGHT and FAGG, Circuit
    Judges.
_____

RICHARD S. ARNOLD, Chief Judge.

Herbert Ross Montanye is serving two concurrent 30-year prison terms for conspiracy and attempt to manufacture methamphetamine. After our en banc Court affirmed his convictions and sentence, United States v. Montanye, 996 F.2d 190 (8th Cir. 1993) ("Montanye II") (vacating United States v. Montanye, 962 F.2d 1332 (8th Cir. 1992) ("Montanye I")), Mr. Montanye filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He claimed his lawyer was constitutionally ineffective for two reasons: He did not object to the finding in the Presentence Report ("PSR") that Mr. Montanye could reasonably have foreseen the production capacity of his co-conspirators' drug laboratory, and he did not

request a lesser-included-offense instruction. The District Court[1] denied the motion, and Mr. Montanye now appeals. We affirm.

I.

In February 1990, Mr. Montanye agreed to purchase and deliver sophisticated glassware to a clandestine drug laboratory in Kansas City, Missouri. See Montanye II, 996 F.2d at 191. This laboratory was the nerve center of an elaborate, ongoing drug manufacturing and distribution network headed by George Bruton, one of Mr. Montanye's co-conspirators. At Mr. Bruton's request, Mr. Montanye drove from Bountiful, Utah, to Boise, Idaho, where he bought, among other things, eight three-neck, 22-litre laboratory flasks. He then delivered the equipment to Bruton at an underground storage facility in Kansas City. In April, federal agents raided the lab, and found 55 grams of methamphetamine and enough ephedrine (a precursor chemical) to manufacture 37.5 kilograms more.[2]

A jury convicted Mr. Montanye of conspiracy and attempt to manufacture methamphetamine. At sentencing, Mr. Montanye objected to the finding in his PSR that 37.5 kilograms of methamphetamine could have been produced with the precursor chemicals found at the lab. According to Mr. Montanye, the PSR assumed one production method, but the laboratory had actually used another. Mr. Montanye contended the laboratory could have produced only 12 kilograms of methamphetamine with the chemicals on hand. Therefore, Mr. Montanye argued, his base offense level should have reflected

_____

[1]The Hon. Howard F. Sachs, United States District Judge for the Western District of Missouri.

[2]The facts of the conspiracy are presented in greater detail in Montanye I, 962 F.2d at 1337-39.

-2-

responsibility for 12, not 37.5, kilograms.[3]  Mr. Montanye did not object, however, to the PSR's statement that the lab's production capacity was "reasonably foreseeable" under U.S.S.G. § 1B1.3.[4]  The District Court adopted the PSR, including the finding that the lab's capacity was 37.5 kilograms.  The Court added two points to Mr. Montanye's offense level for escape, and imposed two concurrent 30-year sentences, the minimum penalty under the Guidelines.[5]

On appeal, a panel of this Court reversed Mr. Montanye's attempt conviction and remanded his conspiracy conviction for resentencing.  Montanye I, 962 F.2d at 1346-47.  Although Mr. Montanye had not appealed his sentence, the panel concluded that a 30-year prison stint for delivering lab glassware was a "gross miscarriage of justice," sufficiently offensive to suspend Federal Rule of Appellate Procedure 28(a)'s usual requirements.  Id. at 1347.  In the panel's view, when Mr. Montanye agreed to deliver the flasks, he "did not know how much or how little methamphetamine his co-conspirators would produce."  Ibid.  Relying on United States v. North, 900 F.2d 131 (8th Cir. 1990), and United States v. Edwards, 945 F.2d 1387 (7th Cir. 1991), cert. denied, 503 U.S. 973 (1992), the panel decided that the laboratory's capacity and output were not "reasonably foreseeable" to Mr. Montanye, and therefore the District Court did not have enough evidence to hold Mr. Montanye

---

[3]The base offense level for 12 kilograms of methamphetamine is 36; for 37.5 kilograms, it is 38.  U.S.S.G. § 2D1.1(c)(3), (4).

[4]Under U.S.S.G. § 1B1.3, "relevant conduct" includes:

> (a)(1)(B) in the case of a jointly undertaken criminal activity . . . , all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity.

[5]The trial court explained, "[t]he minimum sentence . . . is appropriate because it exceeds defendant's life expectancy and the court believes it would be unduly harsh to deny defendant all opportunity to be released from prison in his late 70s."

-3-

accountable for all 37.5 kilograms of manufacturable methamphetamine. Montanye I, 962 F.2d at 1347.

Our Court reheard the case en banc, and affirmed both the attempt conviction[6] and the 30-year sentences. Montanye II, 996 F.2d 190. The en banc Court observed that, under Fed. R. Crim. P. 52(b), a court of appeals may not consider a question not raised by the defendant at trial unless (1) the district court deviated from a legal rule; (2) the error is plain; and (3) the error affected the defendant's substantial rights. Id. at 192. The Court agreed with Mr. Montanye that "when a conspiracy defendant objects that the quantity of drugs attributed to the defendant in the PSR [is] not reasonably foreseeable to the defendant, the district court must make a foreseeability finding about the objecting defendant." Ibid. But, the Court observed, when a defendant fails or decides not to object to the PSR's foreseeability finding, a trial court may simply rely on the Report. Ibid. (citations omitted). This is what the District Court did in Mr. Montanye's case and therefore, the en banc Court found, it did not deviate from a legal rule.[7]

What's more, the Court continued, Mr. Montanye's claim that the record did not support a foreseeability finding was, even if true, no help to him because "[l]ike the district court's obligation to make a finding, the Government's obligation to present evidence in support of a PSR's factual statements only arises for the facts the defendant disputes." Id. at 193. Third,

---

[6]The en banc Court was evenly divided on "whether Montanye's mere delivery of glassware is a substantial step towards manufacturing methamphetamine . . .." Montanye II, 996 F.2d at 192. As the dissenting judges observed, given the even split, Mr. Montanye's attempt conviction "carries no precedential value." Id. at 195 (Bright, J., dissenting).

[7]As Judge John R. Gibson, concurring, observed, Mr. Montanye's sentence range (360 months to life) would have been the same even if the lab's capacity were only 12 kilograms. Montanye II, 996 F.2d at 194-95 (Gibson, J., concurring).

the en banc Court stated that even if the District Court had committed "plain error," the mistake did not affect Mr. Montanye's sentence. Ibid. Mr. Montanye therefore failed to meet Rule 52's three requirements. Even if he had met them, the Court added, it "would not exercise [its] remedial discretion in this case." Mr. Montanye had "ample opportunity" to challenge the PSR's foreseeability finding, but chose instead to dispute the lab's production capacity. Given this choice, the Court reasoned, there is nothing unfair about leaving Mr. Montanye with the sentence that resulted from it. Ibid.

Heeding the dissenting judges' suggestion in Montanye II,[8] Mr. Montanye filed a § 2255 motion to vacate, set aside, or correct his sentence. He claimed that his lawyer was unconstitutionally ineffective because he failed to object to the PSR's foreseeability finding.[9] The District Court denied the motion, noting that "it would be difficult to fault counsel in a constitutional sense for

---

[8]The dissenting judges, who would have remanded the case for resentencing, suggested that "a post-conviction remedy to review the sentence is appropriate, challenging the competency of Montanye's counsel in failing to raise . . . the obvious issue of the foreseeability of his co-conspirators' conduct." Montanye II, 996 F.2d at 196 (Bright, J., dissenting).

[9]Mr. Montanye also argued in the District Court that his lawyer should have asked for jury instructions on an alternative or "lesser-included" theory of liability under 21 U.S.C. § 843(a)(7) (conspiracy to possess, manufacture, distribute, or import prohibited glassware or equipment). In Mr. Montanye's view, he was prejudiced "in that a conviction for conspiracy to distribute [a] three neck round-bottom flask knowing that it will be used to manufacture [a] controlled substance potentially bears a lesser sentence" than the one Mr. Montanye received. The District Court held that there was no basis for a factfinder to conclude that Mr. Montanye had distributed glassware knowing it would be used to make drugs, but not conspired to manufacture methamphetamine. Thus, Mr. Montanye's lawyer was not unconstitutionally ineffective because "[t]here was . . . no reasonable probability that the submission suggested would have resulted in an acquittal of the charge of conspiring in the manufacture of methamphetamine." Mr. Montanye does not challenge this holding.

-5-

not arguing that a nominal output . . . must be used in assessing [the] sentencing responsibility of the glassware supplier" (citing Strickland v. Washington, 466 U.S. 668 (1984)).  The Court also observed that Mr. Montanye had not "offer[ed] to show that the manufacturing capacity used here was atypical and thus unforeseeable."  Mr. Montanye now appeals, and we affirm the District Court's judgment.

## II.

We note at the outset that, given the en banc Court's Montanye II opinion, we need not decide whether Mr. Montanye's undeniably harsh sentence[10] is a "gross miscarriage of justice," see Montanye I, 962 F.2d at 1347.  The only issue before us now is whether Mr. Montanye was unconstitutionally deprived of effective assistance of counsel at sentencing.  We think he was not.

## A.

The Sixth Amendment right to counsel both strengthens and protects our fundamental due-process right to fair trials.  See Strickland v. Washington, 466 U.S. 668, 684-85 (1984).  Our Constitution "recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." Id. at 685.  In other words, the right to counsel has a purpose; an accused's lawyer has a constitutional job to do.  Thus, "the right to counsel is the right to effective assistance of counsel."  Id. at 686 (citation omitted).  A less-demanding interpretation of the Sixth Amendment "would permit a serious risk of injustice to infect criminal trials."  Driscoll v. Delo, 71 F.3d 701, 706 (8th Cir. 1995) (citation omitted).

---

[10]As the District Court observed at sentencing, "sentences are very severe in drug cases and that is intentional."

*Strickland*'s familiar framework for analyzing ineffective-assistance claims reflects the link between the right to counsel and "the ability of the adversarial system to produce just results."  A defendant "must establish that counsel's performance fell below professional standards and that ineffective performance prejudiced his defense."  *Thompson v. United States*, 61 F.3d 586, 587 (8th Cir. 1995); *United States v. Williams*, 994 F.2d 1287, 1291 (8th Cir. 1993) (requiring "unreasonably unprofessional" conduct causing "actual prejudice").  He must prove more than a mistake by his lawyer; the mistake, if there is one, must "undermine[] our confidence in the outcome of the proceeding."  *Thompson*, 61 F.3d at 587.  This is a hard sell; our confidence is not easily undermined.  We presume attorneys provide effective assistance, and refuse to second-guess strategic decisions or exploit the benefits of hindsight.  *Ibid.*

B.

Mr. Montanye insists that his lawyer should have argued that the lab's productive capacity was not reasonably foreseeable, instead of contesting only the capacity itself.  Even if Mr. Montanye is right, he must still prove that he was prejudiced by his lawyer's mistake.[11]  In ineffective-assistance cases, if the defendant does not prove prejudice, "[w]e need not address the reasonableness of the attorney's behavior . . .."  *Williams*, 994 F.2d at 1291 (regardless of counsel's defense strategy, incriminating evidence would have been admitted into evidence).

---

[11]Mr. Montanye repeatedly insists that the government has the burden of proving the quantity of drugs for which a conspiracy defendant is responsible.  This is true.  But if the defendant does not object, the Court may adopt the PSR's findings.  *United States v. Granados*, 962 F.2d 767, 771 n.1 (8th Cir. 1992) (citation omitted).  Because Mr. Montanye did not raise the foreseeability issue at sentencing, and is now arguing ineffective assistance of counsel, the burden is now on *him* to prove ineffective assistance by showing unreasonable conduct and prejudice.

-7-

Because our primary concern is our confidence in the verdict, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691; see also United States v. Thomas, 992 F.2d 201, 205 (8th Cir. 1993).

The District Court did not explicitly conduct the two-step Strickland analysis, but it's clear the Court found no prejudice to Mr. Montanye from his lawyer's alleged mistake. We also find none. As Judge Gibson noted in his Montanye II concurrence,

> The 12 kilogram capacity calls for a base offense level of 36. U.S.S.G. § 2D1.1(c)(4) (Nov. 1991). A 37.5 kilogram capacity calls for a base offense level of 38. Id. There is no controversy about the district court's addition of two offense levels for escape. Thus, under defendant's theory [that the lab's capacity was 12 kilograms] . . . , the total offense level would be 38, and under the government's theory [the lab capacity was 37.5 kilograms], 40. The guideline table reveals considerable difference between these two offense levels when the criminal history category is modest. Montanye, however, had twelve points in his criminal history, about which there is no dispute. This results in a criminal history category of V, and with this category both offense levels 38 and 40 call for a sentence range of 360 months to life. The sentence imposed of 360 months was the minimum sentence for either offense level.

Montanye II, 996 F.2d at 194 (John R. Gibson, J., concurring). Thus, to win on his ineffective-assistance claim, Mr. Montanye must show that, had his lawyer argued the foreseeability issue at sentencing, there is a reasonable probability that the District Court would have found him responsible for less than 12 kilograms.[12]

---

[12]Actually, methamphetamine quantities between 10 and 30 kilograms carry a base offense level of 36. U.S.S.G.

After reviewing the transcript of Mr. Montanye's sentencing proceeding, we are not convinced that this showing has been made. At sentencing, the District Court stated, "[t]he laboratory equipment would have produced 40 kilograms if used five times, [and this] would seem to me to be a very conservative forecast of use . . .." The Court also noted that drug-quantity calculation for sentencing purposes "necessarily looks to reasonable expectations . . .." The Court continued,

> [i]t seems to me that if the laboratory equipment used only five times would produce 40 kilograms, [and] surely it is not intended by anyone in either a legal or illegal business to only use the equipment once or twice, . . . I think that . . . an expectation of using the equipment five times is quite a conservative method of determining capability of production and reasonable expectations of what would be done to carry out the conspiracy . . ..

Rejecting Mr. Montanye's contention that he was only a "minor" participant, the Court observed that "the defendant . . . transported knowing what he was carrying and the purpose of it . . .." Furthermore, in its order below, the District Court repeated its belief that the government's drug-quantity estimate reflected a "conservative method of determining capability of production and reasonable expectations of what would be done to carry out the conspiracy." The Court added,

> even if the productive capacity was as limited as petitioner argued at sentencing, use of the equipment only five times would exceed the capacity charged to petitioner. Presumably those who put together a laboratory expect it to be used more than once. In that sense the calculation . . . may be considered modest or

§ 2D1.1(c)(4). Mr. Montanye would therefore have to show that he could have reasonably foreseen less than ten kilograms before his sentence would be affected.

-9-

conservative.

Finally, the Court stated that "[a]greeing to supply some $6,000 worth of manufacturing equipment would seem . . . to impose responsibility for the likely product of the process. Petitioner . . . does not offer to show that the manufacturing capacity used here was atypical and thus unforeseeable."

The District Court's findings could have been more explicit. Nonetheless, considering all these statements together, we think the Court found that it was foreseeable to Mr. Montanye that the laboratory would be used several times and that it would produce at least 10 kilograms of methamphetamine. We do not think Mr. Montanye's sentence would have been any different had his counsel objected, and Mr. Montanye has brought nothing to our attention which might prove otherwise. The laboratory would have needed to be used only twice to produce the ten or more kilograms necessary to justify petitioner's sentence. Because Mr. Montanye has not shown prejudice, his ineffective-assistance-of-counsel claim fails.

III.

To summarize: Had Mr. Montanye's lawyer objected to the PSR, the District Court would have been required to make individualized findings concerning the drug quantities reasonably foreseeable to Mr. Montanye and within the scope of the conspiracy he joined. But if those findings had been made, there is no reasonable likelihood that petitioner would have been found responsible for less than 10 kilograms. He was a major supplier of sophisticated equipment. He knew it was going to be used to run an illegal laboratory. He tried to get the operators of the laboratory to allow him to distribute some of their product. He has not shown that a reasonable person in his place would not have foreseen that the laboratory would produce at least 10 kilograms. He does not argue

-10-

that counsel should or could have offered evidence that a laboratory of the size reasonably anticipated would have produced less.

Thus, in this case, Mr. Montanye is responsible for the lab's manufacturing capacity, not merely because the operation of the lab was foreseeable, but because the lab's capacity was also foreseeable. More specifically, the operation of a lab that could and would produce at least 10 kilograms of methamphetamine was both within the scope of Mr. Montanye's conspiratorial agreement and reasonably foreseeable to him - or, at any rate, we are reasonably sure the District Court would still have so found even if trial counsel had requested the specific finding for which defendant now contends.

For these reasons, we affirm the judgment of the District Court. We appreciate appointed counsel's diligent service in this post-conviction proceeding.

BRIGHT, Circuit Judge, dissenting.

I dissent.

I address for the third time the district court's failure to make proper foreseeability findings in this case. In Montanye's original direct appeal, this dissenting judge wrote the majority opinion joined in by United States Senior District Judge Henry Woods and Judge Fagg dissented. We concluded that Montanye could not be sentenced for the methamphetamine his co-conspirators "produced" because the amount was not reasonably foreseeable to him; that is, the activities of his co-conspirators did not fall within the scope of his agreement with them. See United States v. Montanye, 962 F.2d 1332, 1347 (8th Cir. 1992) (Montanye did not know how much or how little methamphetamine co-conspirators would produce, he never participated in process of manufacturing or

-11-

distributing methamphetamine, and district court possessed insufficient evidence to find Montanye responsible for all methamphetamine produced).

That decision was later vacated by the grant of an en banc hearing. The en banc majority then decided that Montanye forfeited the foreseeability issue by failing to raise it in the district court. United States v. Montanye, 996 F.2d 190, 192-93 (8th Cir. 1993) (reasoning this court lacked authority to consider question in any event because district court is not required to make foreseeability findings unless defendant objects to PSR and Montanye did not show prejudice). In a dissent joined by Judges McMillian and Morris S. Arnold, we stated that Montanye's thirty-year sentence for delivering glassware was grossly unfair because "the record before us does not show that Montanye knew the quantity of methamphetamine to be produced by his co-conspirators." Id., at 195. The en banc case left open the possibility of a post-conviction remedy.

Montanye then brought this 28 U.S.C. § 2255 motion, arguing his counsel was ineffective in failing to raise the issue of foreseeability at sentencing. The record shows that in the course of an extensive two-year conspiracy, Montanye in effect took one long distance telephone call, bought some glassware, transported it interstate, got paid $6,000, and went home. This appears to have been his only contact with the conspiracy, despite the government's attempts at this late date to dredge up statements Montanye made during the trip about the possibility of distributing methamphet-amine for the conspiracy. The government itself claims the methamphetamine was already an ongoing operation before the additional flasks were acquired by Montanye, and he was not even then in the State of Missouri. For this, he was held accountable not for the entire amount his co-conspirators produced but instead for the entire amount they might have produced had the lab not been seized. At sentencing, Montanye's counsel failed to raise the

-12-

foreseeability issue and indeed conceded Montanye should be held accountable for the full amount the laboratory was capable of producing.

The district court in rejecting the incompetency of counsel contention did so by giving a crabbed and narrow reading to United States v. Edwards, 945 F.2d 1387 (7th Cir. 1991) and United States v. North, 900 F.2d 131 (8th Cir. 1990).  I believe this reading was wrong.  See, e.g., United States v. Valencia-Lucena, 988 F.2d 228, 234 (1st Cir. 1993) ("criminal conspiracy net is often cast widely. Individuals may be involved who know that the agreement they have entered is illegal but have no way to foresee the magnitude or ambition of the enterprise, as in the case of an individual hired to remedy an unexpected complication in the main conspirators' plot").

The majority here relies in part on Judge John R. Gibson's concurrence for its affirmance.  In that concurrence, Judge Gibson calculated the assumed productive capacity of a methamphetamine laboratory that never operated in the manner projected by the prosecution.  These speculations have nothing to do with foresee-ability.  Indeed, no court has yet made any proper foreseeability findings as a basis to support Montanye's thirty-year prison sentence.  This omission flows directly from counsel's ineffective assistance at sentencing in failing to raise the foreseeability issue which was then well known.  See U.S.S.G. § 1B1.3, comment. (n.1) (November 1989) (in case of jointly undertaken criminal activity, defendant accountable for others' conduct where it was "reasonably foreseeable by the defendant. . . . [w]here it is established that the conduct was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake, such conduct is not included in establishing the defendant's offense level under this guideline").

-13-

While I adhere to the views previously stated by this writer, _Montanye_, 962 F.2d at 1347; _Montanye_, 996 F.2d at 195-96, that the thirty-year sentence imposed on Montanye is improper, nevertheless the learned district judge has imposed this sentence under the guidelines and the majority has approved. By any ordinary measure outside the guidelines, I would think this sentence would be considered draconian, unnecessarily harsh and unreasonable. The defendant's thirty years of incarceration for furnishing glassware to the conspiracy, a conspiracy which incidentally never delivered one gram of drugs to any consumer, will cost the public $21,995 per year based on 1995 figures[13] and approximately over $650,000 for the full thirty-year sentence.

This result suggests that I should repeat what I previously wrote in _United States v. Hiveley_, 61 F.3d 1358 (8th Cir. 1995). I commented on the sentencing guidelines as follows:

> Federal judges who sentence offenders know the problem. 86.4% of district judges support changing the current sentencing rules to increase the discretion of the judge; 70.4% support repealing most of all mandatory minimum sentencing and 82.8% of all district judges feel that federal judges would be appropriate decision makers about the nature and severity of sanctions to be imposed in criminal cases. More than half would eliminate sentencing guidelines. Federal Judicial Center, _Planning for the Future: Results of a 1992 Federal Judicial Center Survey of United States Judges_ (1994).
>
> These are not "soft headed judges." They serve on the front lines of the criminal justice system and know of what they speak. They represent appointees of every president from Eisenhower to Clinton. But the law makers and law enforcers, Congress and the administration, seem

---

[13]    In Fiscal 1995, we estimate the average cost per day per inmate will be $60.26, with an average annual amount of $21,995.

Letter from Kathleen M. Hawk, Director, United States Department of Justice, Federal Bureau of Prisons, to the Honorable Myron H. Bright (July 6, 1995)(on file with Judge Bright).

to turn a deaf ear to the problem and to the unnecessary, immense cost to the taxpayer of unnecessary lengthy incarceration of drug offenders.

I think it can be said that judges are vitally concerned with the drug problem in America. Reason, not emotion, must be brought to bear on the subject. What are judges to do about these unreasonable sentencing rules which we must apply? I suggest that we must try to make our views known loudly and clearly.

As for this writer, I intend to cite to this opinion and its addendum in every drug case where I believe the present system requires the sentencing judge to impose an unreasonable sentence. I would urge my fellow judges, similarly, to speak out and to write opinions on this subject. The public needs to know that unnecessary, harsh and unreasonable drug sentences serve to waste billions of dollars without doing much good for society. We have an unreasonable system.[14]

The message judges, district and circuit, can send Congress and the President is this: If you want to save billions for the country without harming anyone, take a look at and change the rules of sentencing now in the federal courts. If we speak with a united voice perhaps they, and the public, will listen.

Id., at 1365-1366.

Accordingly, I dissent.

---

[14]I have written other commentaries on the guidelines. See, e.g., United States v. Griffin, 17 F.3d 269, 273 (8th Cir. 1994) (Bright, J., dissenting) (addressing the myth of consistency in sentences under the Guidelines and commenting on the obvious unfairness of mandatory minimum sentences); United States v. Goebel, 898 F.2d 675, 679 (8th Cir. 1990) (Bright, J., concurring) (observing that the Sentencing Guidelines produce disparate and unfair sentencing results among similar offenders); United States v. O'Meara, 895 F.2d 1216, 1221 (8th Cir.) (Bright, J., dissenting), cert. denied, 498 U.S. 943 (1990) ("This case opens the window on the sometimes bizarre and topsy-turvy world of sentencing under the Guidelines.").

A true copy.

Attest:

   CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.